64

FRANCES MOYER, Also Known as FRANCES CORBY, Respondent, *v.*
ELIZABETH G. BRIGGS, Appellant, et al., Defendants.

First Department, February 28, 1975.

*S. Michael Weisberg* for appellant.

*Freda Silbowitz* for respondent.

LUPIANO, J.    This is an appeal from a judgment of the
Supreme Court, New York County (HELMAN, J.), entered
September 5, 1974, in plaintiff's favor in the sum of $20,279.63,
with interest and costs, pursuant to a grant of summary
judgment to plaintiff.

On September 18, 1973, Mr. Francis Corby opened a bank
account in his name and in the name of plaintiff, his daughter,
which account was payable to either or the survivor.   Over the
next two months he made deposits totaling approximately
$20,000.   On January 3, 1974, only three and one-half months

after opening this account, Mr. Corby withdrew the entire amount credited to the account and gave this fund to defendant, Elizabeth Briggs. Contemporaneous with this act, Mr. Corby on January 4, 1974, apparently executed a last will and testament wherein he bequeathed *all* his property to said defendant and named her executrix. A short time later, on February 11, 1974, Mr. Corby died, having been afflicted with terminal cancer. Defendant Elizabeth Briggs deposited the afore-mentioned fund in her savings account. Plaintiff in her capacity as surviving joint tenant, made demand on said defendant for this fund and upon the latter's refusal to return same, initiated this action.

Initially, it is noted that where there is a *valid* joint account, "there are no circumstances in which the survivor will be entitled to less than the whole fund where one of the tenants has withdrawn more than his moiety *and* the right of survivorship has vested in either one of them since a withdrawing joint tenant can only suffer a forfeiture to a survivor in whom that right has vested. In short, after a right of survivorship has vested, there should in legal theory never be a recovery of half the fund or the excess over the moiety. *The survivor must take all.* Only while both joint tenants are still living may the recovery be for the excess over the moiety withdrawn" (*Matter of Filfiley*, 63 Misc 2d 824, 829–830, affd. on the opinion of the Surrogate in 43 A D 2d 981 [2d Dept., 1974]; see, also, *Matter of Kleinberg* v. *Heller*, 45 A D 2d 514 [1st Dept., 1974]). The critical question on this appeal is — has an issue whether a joint tenancy was intended as to the account under consideration been presented on the record herein. Plaintiff is supported in her claim by the statutory presumption as to joint deposits delineated in section 675 of the Banking Law. As no claim of fraud or undue influence is averred against plaintiff in the opening of the account by the decedent, the burden is on defendant Briggs to refute the presumption of a valid joint account (Banking Law, § 675, subd. [b]).

Special Term observed that the "claim asserted by defendant as a challenge to plaintiff's right to the funds, is (1) that the donor at the time of the creation of the account had taken the advice of friends to establish such an account instead of keeping large sums of cash at home so that the account could be used *solely as a convenience for himself* and (2) that at the time of the transfer to defendant, made in the presence of deceased's attorneys, tapes had been recorded indicating an expressed intention of deceased to deny his cotenant the benefit of any of the funds on deposit" (emphasis supplied). Scrutiny of the

record discloses that in opposition to plaintiff's motion for summary judgment, defendant Elizabeth Briggs asserts that the landlady of the deceased, one Margaret Musheaian, being apprised that the deceased kept large sums of money around the house, persuaded decedent to deposit the money in an account with his daughter as joint tenant so as to avoid the danger of robbery and to enable someone to withdraw the money in the event something happened to decedent; that decedent was estranged from his daughter throughout this critical period and, in furtherance of his desire that she should not benefit from his estate, consulted the law firm of Mujica and Goodman and, pursuant to their supervision and advice, executed a will (a copy of which was annexed to defendant's affidavit) *and* withdrew the entire amount in the joint account. It is further averred that said law firm made tape recordings of the conversations had with the deceased. The will was not probated, apparently because there were no assets of the estate other than possibly the fund withdrawn by decedent from the account and transferred to defendant.

In *Matter of Bricker (Krimer)* v. *Krimer* (13 N Y 2d 22, 27), the Court of Appeals declared that " the withdrawal of moneys from the joint account does not destroy the joint tenancy, if one was created. It merely opens the door to competent evidence, if available, that no joint tenancy was intended to be created ". If a joint tenancy was not intended to be created herein, then the defendant Elizabeth Briggs or, assuming an improper transfer of the fund by decedent to Elizabeth Briggs, the decedent's estate would be entitled to the fund withdrawn from the account. In this regard, note must be taken of the fact that upon probate of decedent's will, Elizabeth Briggs in her capacity as executrix would be the representative of decedent's estate. Under the so-called " dead man's statute ", an exception allows the representative of the estate to testify as to transactions with the decedent to protect the estate against unfounded claims (CPLR 4519).

We have declared that on a summary judgment motion " issue-finding, rather than issue-determination, is the key to the procedure " (*Esteve* v. *Abad,* 271 App. Div. 725, 727 [1st Dept.] ; see *Sillman* v. *Twentieth Century-Fox Film Corp.,* 3 N Y 2d 395). It has also been noted that evidence excludable under the " dead man's statute " may be used to defeat a motion for summary judgment, but not in support thereof (*Phillips* v. *Kantor & Co.,* 31 N Y 2d 307). Where there is any significant doubt whether there is a material triable issue of fact or where the material issue

of fact is "arguable", summary judgment must be denied (*Phillips* v. *Kantor & Co., supra; Barrett* v. *Jacobs*, 255 N. Y. 520).

Patently, the circumstances delineated in defendant Elizabeth Briggs' affidavit in opposition to plaintiff's motion are sufficient to impel denial of summary judgment on the ground that a material factual issue has been advanced as to the decedent's intent in regard to the joint bank account, which issue requires a hearing for proper resolution.

The judgment and order of the Supreme Court, New York County (HELMAN, J.), respectively entered August 30, 1974 and September 5, 1974, should be reversed, on the law, with costs and disbursements, and plaintiff's motion for summary judgment should be denied.

NUNEZ and KUPFERMAN, JJ. (concurring). We concur with Judge LUPIANO in his conclusion. If the decedent had withdrawn only one half of the money in the account, there could have been no objection. We cannot agree that withdrawal of the full amount voids the entire action.*

Because of the different views expressed, see *Matter of Kleinberg* v. *Heller* (45 A D 2d 514 [1st Dept.]), this area of the law requires *de novo* examination by the Court of Appeals or else legislative consideration.

LANE, J. (dissenting). Francis Corby (Corby) opened a joint bank account on September 18, 1973 with his only daughter, Frances (Corby) Moyer (Moyer), and within two months after that date the deposits totaled $20,000.

On January 3, 1974, Corby withdrew all of the money in the account by bank check payable to himself and indorsed to the order of the defendant, Elizabeth Briggs (Briggs). Contemporaneous with the delivery of the check to Briggs, Corby executed a last will and testament bequeathing all of his property to Briggs and naming her as executrix. On February 11, 1974, a little more than a month later, Corby died of terminal cancer. Briggs deposited these funds with the First Federal Savings & Loan Association (Bank). It may be parenthetically noted that the Bank was initially joined as a party defendant; however, Special Term granted the Bank's cross motion to be considered a stakeholder, with the consent of the other parties concerned,

---

* For a full discussion of the situation regarding joint bank accounts between spouses see Law and the Family by Henry H. Foster, Jr. and Doris Jonas Freed, New York Law Journal, January 31, 1975, page 1, on "Marital Property and the Chancellor's Foot: Joint Bank Accounts Between Spouses — Part 2."

and the Bank is not participating in the prosecution of this appeal.

Moyer sued for the return of the funds and, after issue was joined, moved for summary judgment, which motion was granted by Special Term.

It has been stated that, given a valid joint account, "There are no circumstances in which the survivor will be entitled to less than the whole fund where one of the tenants has withdrawn more than his moiety *and* the right of survivorship has vested in either one of them since a withdrawing joint tenant can only suffer a forfeiture to a survivor in whom that right has vested.

"In short, after a right of survivorship has vested, there should in legal theory never be a recovery of half the fund or the excess over the moiety. *The survivor must take all.* Only while both joint tenants are still living may the recovery be for the excess over the moiety withdrawn." (*Matter of Filfiley*, 63 Misc 2d 824, 829–830, affd. on opn. of the Surrogate 43 A D 2d 981 [2d Dept.].)

We have taken a similar position on this issue (*Matter of Kleinberg* v. *Heller*, 45 A D 2d 514). Furthermore, plaintiff may also rely on the statutory presumption that the parties intended a joint tenancy (Banking Law, § 675).

The only question therefore remaining is whether defendant has presented an issue of fact sufficient to warrant denial of summary judgment.

In opposition to the motion at Special Term, defendant Briggs submitted an attorney's affidavit as well as her own affidavit. The attorney referred to certain alleged misstatements of fact in plaintiff's papers, and Briggs alleged that Corby's landlord had insisted he open a joint account with Moyer for the sake of convenience since Corby was already suffering from terminal cancer. The assertions of the attorney's affidavit relating to alleged misstatements of fact must be disregarded, since they are not based on his own personal knowledge of the facts involved. Similarly, since there is no affidavit from Corby's landlord which would confirm the allegation in Briggs' affidavit about opening the account as a "convenience," it too must be disregarded.

Furthermore, the allusions to forthcoming affidavits from the attorneys who drew Corby's will as well as the proposed production of alleged transcripts of tapes made by the deceased evidencing his intent to disinherit his only living blood relative must also be disregarded, since these affidavits and transcripts

were not produced, and no explanation was given for their absence (see e.g., CPLR 3212, subd. [f]).

The law is clear that the withdrawal of all of the funds from a validly created joint account does not destroy the joint tenancy, but merely allows for introduction of *competent evidence* that no joint tenancy was intended to be created (*Matter of Bricker (Krimer)* v. *Krimer,* 13 N Y 2d 22, 27).

However, in this case such " competent evidence " was not produced. While it is true that evidence which may be subject to the bar of the " Dead Man's Statute " (CPLR 4519) at the time of trial may aid to defeat a motion for summary judgment (*Phillips* v. *Kantor & Co.,* 31 N Y 2d 307), nevertheless, presentation of a triable issue of fact still remains the *sine qua non* for denial of summary judgment. These issues must be genuine, not feigned (*Glick & Dolleck* v. *Tri-Pac Export Corp.,* 22 N Y 2d 439, 441) ; based on " proof," not shadowy and conclusory statements (*Curry* v. *Mackenzie,* 239 N. Y. 267, 270).

In this case, Moyer, the daughter of the deceased, produced the evidentiary material necessary to grant summary judgment in her favor.

The defendant Briggs, however, offered nothing other than tantalizing speculation. Not a scintilla of evidence sufficient to create a " triable issue of fact " was produced. Even the evidence " promised " for production at a later date is of dubious probative value.

As Judge (now Chief Judge) BREITEL so aptly stated, " Summary judgment should be denied where there is any doubt, at least any significant doubt, whether there is a material, triable issue of fact (e.g., *Glick & Dolleck* v. *Tri-Pac Export Corp.,* 22 N Y 2d 439, 441; *Exchange Leasing Corp.* v. *Bundy,* 29 A D 2d 828; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 3212.05c) " (*Phillips* v. *Kantor & Co.,* 31 N Y 2d 307, 311). In the case at bar, there was no such significant doubt which would mandate denial of summary judgment.

Accordingly, the judgment entered September 5, 1974 based on an order granting summary judgment should be affirmed.

NUNEZ and KUPFERMAN, JJ., concur with LUPIANO, J., in an opinion; McGIVERN, P. J., and LANE, J., dissent in an opinion by LANE, J.

Judgment, Supreme Court, New York County, entered on September 5, 1974, and order of said court entered on August 30, 1974, reversed, on the law, the judgment vacated, and plaintiff's motion for summary judgment denied. Appellant shall recover of respondent $60 costs and disbursements of this appeal.